UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

BOBBY R. DAMRON,                    )
                                   )
        Plaintiff,                 )
                                   )
VS.                                )          No. 20-1239-JDT-cgc
                                   )
HARDEMAN COUNTY                    )
CORRECTIONAL FACILITY, ET AL.,     )
                                   )
        Defendants.                )
                                   )

_____

ORDER TO MODIFY THE DOCKET,
DISMISSING COMPLAINT, AND GRANTING LEAVE TO AMEND

_____

On October 22, 2020, Plaintiff Bobby R. Damron, a Tennessee Department of
Correction (TDOC) inmate who is incarcerated at the Hardeman County Correctional
Facility (HCCF) in Whiteville, Tennessee, filed a *pro se* complaint pursuant to
42 U.S.C. § 1983. (ECF No. 1.) After Plaintiff filed the required documentation, the Court
granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the
Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 5.) The Clerk
shall record the Defendants as the HCCF; the HCCF Warden, Hilton Hall, Jr.;[1] Assistant

_____

[1] The complaint identifies Warden Hall only by his last name, but the Tennessee
Department of Correction website provides his full name. *See* www.tn.gov/correction/sp/state-
prison-list/hardeman-county-correctional-facility.html. The Clerk is directed to MODIFY the
docket to include Defendant Hall's full name.

Warden First Name Unknown (FNU) Dodds; Assistant Warden FNU Owens; Chief of Unit Managers FNU Huggins; TDOC Contract Monitor FNU Yeager; and Case Manager FNU Lanier. (*See* ECF No. 1 at PageID 1, 6.) Damron also attempts to sue "All Staff HCCF" and "Unit JC Managements" but does not identify any other HCCF employees by name. (*See id.* at PageID 1.)

Damron's complaint is difficult to understand because it is somewhat incoherent and more in the nature of a rant than an organized complaint. Damron alleges he was robbed by other HCCF inmates in JC pod, who are repeatedly referred to in the complaint as "gangbangers," "scum inmates," "scum inmates–soboxin ICE," and "scum soboxin ICE crazed inmates."[2] The inmates allegedly stole Damron's personal property, his computer data,[3] identity, address, personal mail, and "contacts with my outside family." (*Id.* at PageID 5.) He states the inmates "robbed my contacts to where I could not send a letter out or could not get a letter comming [sic] in." (*Id.*) Damron further alleges Defendant Lanier "let inmates in JC pod" rob his computer data by giving the inmates his "personal print out sheets." (*Id.* at PageID 6.) He states the inmates have threatened his life and are "trying to do away with me that's attempt to murder me." (*Id.* at PageID 7, 8.) One inmate

---

[2] The Court surmises that "soboxin" may be a reference to suboxone, which is used to treat opioid addiction. *See* www.suboxone.com. Damron's use of "ICE" is likely a reference to "crystal meth," a potent form of methamphetamine. *See* www.webmd.com/mental-health/addiction/crystal-meth-what-you-should-know#1.

[3] The computer data Damron alleges was stolen includes "parole[,] commissary trust funds[,] phone . . . time sheets – print out sheets – classification,]" (ECF No. 1 at PageID 7), as well as his "medical." (*Id.* at PageID 9, 13.) Damron does not, however, explain what he means when he says he was "robbed" of time sheets, parole, classification, and medical.

in particular allegedly stole Damron's social security debit card.  (*Id.* at PageID 8.)  Damron repeatedly states "soboxin and ICE needs to be stopped" at the HCCF.  Though he alleges he has notified numerous individuals about the problems he has experienced at the prison, nothing has been done.  Damron seeks release from prison and $30 million in damages. (*Id.* at PageID 15.)

In a document received by the Clerk on November 17, 2020, Damron repeats some of the allegations in his complaint.  (ECF No. 6.)  He then alleges that on three occasions in October and November 2020, unidentified "staff" let other inmates into his cell while he was out.  (*Id.* at PageID 34.)  The inmates "sprayed my cell down" with "something[,] urine and acid – burned my face 3 times."  (*Id.*)  Damron went to medical because he was in pain but alleges "they did nothing but g[i]ve me a packet of grease."  (*Id.*)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1)     is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2)     seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied.  *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).  The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines

3

whether the allegations "plausibly suggest an entitlement to relief.'"  *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681).  Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679.  Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P.  8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief."  *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed."  *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)).  *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Damron filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

To the extent Damron asserts any claims against the TDOC Contract Monitor, Yeager, in his official capacity, the claims must be treated as claims against his employer, TDOC. Claims against the TDOC are, in turn, treated as claims against the State of Tennessee itself. However, Damron cannot state a valid claim against the State of Tennessee. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). Tennessee has not waived its sovereign immunity and therefore may not be sued for damages. *See* Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person within

the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will*, 491 U.S. at 71.

Similarly, any official capacity claims against the HCCF Defendants are treated as claims against their employer, CoreCivic, a private company which manages the HCCF.[4] "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care or food services to prisoners. *Id.* at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001); *see also Eads v. State of Tenn.*, No. 1:18-cv-00042, 2018 WL 4283030, at *9 (M.D. Tenn. Sept. 7, 2018). To prevail on a § 1983 claim against CoreCivic, Damron "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). Damron does not, however, allege the HCCF Defendants' actions were taken pursuant to a policy or custom of CoreCivic which was the "moving force" behind any violation of his constitutional rights.

---

[4] *See* www.tn.gov/correction/sp/state-prison-list/hardeman-county-correctional-facility.html (Hardeman County Correctional Facility is owned by the Hardeman County Correctional Facilities Corporation, which contracts with CoreCivic for management of the prison.").

As to Damron's individual capacity claims, he does not allege that Defendants Hall, Dodds, Owens, Huggins, or Yeager engaged in any personal wrongdoing.  He appears merely to allege they are responsible for what occurs at the HCCF because of their supervisory positions.  Under § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted).  A supervisory official, who is aware of the unconstitutional conduct of his subordinates but fails to act, generally cannot be held liable in his individual capacity.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996).  Furthermore, a failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability.  *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation.").  The complaint in this case does not allege that Defendants Hall, Dodds, Owens, Huggins, or Yeager, through their own actions, violated Damron's rights.

7

Any claim that Damron was physically harmed by the Defendants' actions would arise under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). This proscription on cruel and unusual punishment encompasses an inmate's right to personal safety. *Stewart v. Love*, 796 F.2d 43, 44 (6th Cir. 1982). However, except for the allegation that Damron's face was burned after inmates were allowed to enter his cell and spray it with a substance, Damron has provided no details of any incident that caused him actual harm.

It is unclear whether Damron's November 17 document is an attempt to assert a claim for lack of adequate medical care, which also arises under the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Johnson v. Karnes*, 398 F.3d 868, 873-74 (6th Cir. 2005).

An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005), or that he has been deprived of the "minimal civilized measure of life's necessities," *Wilson*, 501 U.S. at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see also Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004).

The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 297, 302-03. The plaintiff must show that the prison officials acted with "deliberate

indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. 25, 32 (1993). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus, "the prison official must know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837-38.

As stated, Damron did not identify the HCCF "staff" who allegedly allowed other inmates into his cell to spray it. Nor has he identified any medical provider who failed to provide him with medical care, stating only that "they" did nothing but give him "a packet of grease." Thus even if Damron's sparse allegations stated a claim for failure to protect him and/or for lack of medical care, service of process cannot be made on unidentified parties, and the filing of a complaint against such unknown defendants does not toll the running of the statute of limitation. *See Wiggins v. Kimberly-Clark Corp.*, 641 F. App'x 545, 548-49 (6th Cir. 2016) ("The Sixth Circuit treats naming a specific individual in place of a John Doe as joinder of a new party." (*citing Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996))).

To the extent Damron is asserting Defendant Lanier was responsible for other inmates stealing his money and other personal property, the claim arises under the Due Process Clause of the Fourteenth Amendment. However, even if the taking of Damron's property can be attributed to Lanier's actions, deprivation of property does not state an actionable claim under § 1983 if adequate state remedies are available to redress the deprivation. *See, e.g.*, *Parratt v. Taylor*, 451 U.S. 527 (1981), *partially overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 330-31 (1986); *Smith v. Rose*, 760 F.2d 102,

106 (6th Cir. 1985). This is true even if the property is taken intentionally. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). In order to state a procedural due process claim, "the plaintiff thus must plead that his available state remedies are inadequate to redress the wrong." *Trusty v. Centurion Health Servs.*, No. 19-5872, 2020 WL 548225, * 2-3 (6th Cir. Jan. 7, 2020). Damron has not alleged that any state remedy, such as filing suit in state court to recover his property, was inadequate.

With regard to the allegation that Defendant Lanier gave Damron's "print out sheets" to other inmates, presumably referring to his personal information, Damron does not specify the constitutional right Lanier allegedly violated. If he is alleging Lanier violated a right to privacy, he has no claim. As another district court in this circuit has explained:

> The Sixth Circuit "has recognized an informational-privacy interest of constitutional dimension in only two instances: (1) where the release of personal information could lead to bodily harm, and (2) where the information released was of a sexual, personal, and humiliating nature." *Wiles v. Ascom Transp. System, Inc.*, 478 F. App'x 283, 295 (6th Cir. 2012) (quoting *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (citations omitted)). Applying this standard, it has held that a county clerk's public disclosure of a person's social security number on a website did not establish a violation of rights protected by the Constitution. *Lambert*, 517 F.3d at 436, 442-46. *See also Barber v. Overton*, 496 F.3d 449, 455-57 (6th Cir.2007) (release of prison guards' birth dates and social security numbers did not rise to level of constitutional violation); *Cutshall v. Sundquist*, 193 F.3d 466, 481 (6th Cir. 1999) ("the Constitution does not provide Cutshall with a right to keep his registry information private.").
>
> In *Lambert*, the Sixth Circuit explained that, while "as a policy matter, the Clerk's decision to provide unfettered internet access to people's Social Security numbers was unwise . . . to constitutionalize a harm of the type [the plaintiff] has suffered would be to open a Pandora's box of claims under 42 U.S.C. § 1983, a step we are unwilling to take." *Lambert*, 517 F.3d at 445. Thus, as in *Lambert*, Shelton's allegation that his identifying information has

been released does not state a claim for violation of rights protected under the Fourteenth Amendment for which he may pursue a claim under 42 U.S.C. § 1983. *Id.* at 436.

*Shelton v. Price*, No. 2:2-114-DCR, 2020 WL 4606880, at \*2-\*3 (E.D. Ky. Aug. 11, 2020) (dismissing prisoner's claim based on allegation that his birthdate and social security number were released in a public court filing). Here, Damron states his life is in danger from the other inmates, but his rambling and repetitive complaint does not clearly explain how that threat of harm was caused by Lanier's alleged release of his personal information.

For all of the foregoing reasons, Damron's complaint is subject to dismissal for failure to state a claim.

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court finds Damron should be given an opportunity to file an amended complaint.

In conclusion, the Court DISMISSES Damron's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and

1915A(b)(1).  However, Damron is GRANTED leave to file an amended complaint.  Any amendment must be filed **within 21 days, on or before February 17, 2021.**

Damron is advised that an amended complaint will replace the original complaint and must be complete in itself without reference to the prior pleadings.  The amended complaint must be signed, must adequately identify all Defendants sued, and must allege sufficient facts to support each claim without reference to any extraneous document.  Any exhibits must be identified by number in the text of the amended complaint and must be attached to the amendment.  Each claim for relief must be stated in a separate count and must identify each Defendant sued in that count.  If Damron fails to file an amended complaint within the time specified, the Court will dismiss the case in its entirety, assess a strike pursuant to 28 U.S.C. § 1915(g), and enter judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE